**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SIDNEY PETILLO | No. 2:19-CV-00667-TLN-DMC-P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| HAINEY, et al., | |
| Defendants. | |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the Court is Defendants' unopposed motion for summary judgment. ECF No. 77.  Plaintiff alleges that Defendants engaged in excessive force, used discriminatory language towards him, illegally strip-searched him, and inappropriately touched him in violation of his the Fourth, Eighth, and Fourteenth Amendments.  ECF No. 24. Defendants move for summary judgment, arguing that Plaintiff has not exhaust his administrative remedies before commencing this action.  ECF No. 77 at 1.  The undersigned agrees that Plaintiff has failed to exhaust his administrative remedies and thus recommends that Defendants' motion for summary judgment be granted.

/ / /

/ / /

/ / /

1

# I. BACKGROUND

Plaintiff commenced this civil rights action on April 16, 2019, alleging that

Defendants, Haynie, Jones, Villasenor, Mallot, Castello, and Herrera, employees of California

State Prison at Sacramento, violated his Fourth, Eighth, and Fourteenth Amendment rights.[1]  ECF

No. 1.  He alleges in his second amended complaint that on February 7, 2018, Defendant Jones

injured him by striking him in the chest and used derogatory, discriminatory, homophobic, and

racist language against him.  ECF No. 24 at 5-7.  He claims that Defendants Herrera and

Villasenora strip-searched him, based on Defendants Hainey and Mallot order, and that

Defendant Herrera groped his genitalia during the search.  Id. at 9-12.  Plaintiff also contends that

Defendants Hainey, Mallot, Herrera, Costello, and Villasenora slammed him into a metal cage,

causing injury to his left shoulder, elbow, and face.  Id. at 8.

Plaintiff filed a prison grievance on February 20, 2018, log number SAC-B-01033,

addressing the above incident.  ECF No. 77-4 at 12.  The grievance bypassed the first level of

review.  Id.  At the second level of review, the grievance was partially granted and referred to the

third level of review.  Id. at 16-17.  On July 2, 2018, a third-level decision issued, rejecting

plaintiff's grievance because it lacked the required CDCR Form 1858 Rights and Responsibilities

Statement.  Id. at 18.  The third level response stated,

> Be advised that you cannot appeal a rejected appeal, but should take the
> corrective action necessary and resubmit the appeal within the timeframes
> specified in CCR 3084.6(a)[2] and CCR 3084.8(b).  Pursuant to CCR
> 3084.6(e), once an appeal has been cancelled, that appeal may not be
> resubmitted.  However, a separate appeal can be filed on the cancellation
> decision.  The original appeal may only be resubmitted if the appeal on the
> cancellation is granted.

---

[1] Plaintiff also named Castello as a Defendant on this action.  ECF No. 24.  On July 29,
2020, the Court was notified that Defendant Castello did not intend to waive service of process
because the California Department of Corrections and Rehabilitation was unable to identify any
staff member with the name Castello, or variance thereof, working at the time of the alleged
incident.  See ECF No. 39.  The Court ordered Plaintiff to provide additional information to serve
this defendant on August 3, 2020 and warned him that failure to effect service may result in the
dismissal of unserved defendants.  See Fed. R. Civ. P. 4(m).  ECF No. 43.  To date, Plaintiff has
failed to serve Defendant Castello.

[2] California Code of Regulation 3084.6(a)(2) requires an appeal on a cancelled decision to
be returned within 30 calendar days of rejection.

1    Id.

2           The record does not reflect that Plaintiff filed an appeal challenging the canceled

3    decision.  Plaintiff did, however, submit a document to the Office of Appeals on November 29,

4    2018.  Id. at 10.  Nevertheless, the Office of Appeals informed him that his appeal was canceled

5    on February 11, 2019:

6

7           Your appeal has been cancelled pursuant to the California Code of
             Regulations, Title 15, Section (CCR) 3084.6(c)(10).  Failure to correct and
             return a rejected appeal within 30 calendar days of the rejection.

8
             The Office of Appeals rejected and returned the appeal to the
9    inmate on July 2, 2018.  The envelope addressed to The Office of Appeals
     was signed by staff on November 29, 2018 and was postmarked on
10   December 4, 2018.  The envelope was received in our office on December
     13, 2018.  This exceeds time constraints to submit for third level review.

11
             Pursuant to CCR 3084.6(e), once an appeal has been cancelled,
12   that appeal may not be resubmitted.  However, a separate appeal can be
     filed on the cancellation decision.  The original appeal may only be
13   resubmitted if the appeal on the cancellation is granted.  You have 30
     calendar days to appeal the cancellation.  Time constraints begin from the
14   date on the screen out form which cancelled your appeal.

15   Id.

16

17                          **II.  THE PARTIES' EVIDENCE**

18   **A.      Defendants' Evidence**

19          Defendants' motion for summary judgment is supported by the declaration of

20   Howard E. Moseley, Associate Director of the Office of the Appeals, ECF No. 77-4, and a

21   Statement of Undisputed Facts, ECF No. 77-3, contending the following facts are undisputed:

22           1.      Plaintiff Sidney Petillo was an inmate incarcerated by the
     California Department of Corrections and Rehabilitation (CDCR), who
23   was housed at California State Prison, Sacramento on February 7, 2018,
     when the events alleged in his lawsuit purportedly occurred, and was
24   housed at California State Prison, Corcoran when he filed his original
     complaint on April 16, 2019, his First Amended Complaint on May 13,
25   2019, and his operative Second Amended Complaint on October 7, 2019.
     (Complaint at 1-2, ECF No. 1; First Amended Complaint at 1, ECF No. 7;
26   Second Amended Complaint (SAC) at 1, ECF No. 24.)

27           2.      Plaintiff brings this action under 42 U.S.C. § 1983, alleging
     that Defendants used excessive force against him, discriminatory language
28   against him, illegally strip-searched him, and touched him inappropriately

                                          3

1     in violation of his Fourth, Eighth, and Fourteenth Amendment rights.
      (SAC at 5-12; Findings and Recommendation at 2-3, ECF No. 30; Order
2     Adopting Findings and Recommendation at 1-2, ECF No. 34.)

3           3.      Defendants Haynie, Jones, Villasenor, Mallot, and Herrera,
      were employed by CDCR as a correctional officers at California State
4     Prison, Sacramento at the time the alleged incidents occurred. (SAC at 3.)

5           4.      CDCR, which includes California State Prison,
      Sacramento, has an administrative remedies process in place for all inmate
6     grievances and had this process in place during the timeframe relevant to
      Plaintiff's claims. (Moseley Decl. ¶¶ 2-5.)

7
            5.      All inmate grievances are subject to final-level review by
8     CDCR's Office of Appeals (OOA) before administrative remedies are
      considered exhausted for that grievance. (Moseley Decl. ¶ 2.)
9
            6.      All offender appeals are reviewed and screened out or
10    screened in by the OOA. An appeal is screened out (and not answered
      substantively) if it does not comply with the regulations governing the
11    appeal process. Instead, the appeal is returned with a letter instructing the
      offender how to cure the deficiency, if a cure is possible. An appeal is
12    screened in (and answered substantively) if it complies with the governing
      regulations. The Appeal History Report includes appeals that were
13    screened out or screened in; and if screened out, the report includes the
      reason for the screen-out. (Moseley Decl. ¶ 4.)
14
            7.      Plaintiff submitted a grievance concerning his claims in this
15    case to California State Prison, Sacramento in grievance log no. SAC-B-
      18-01033, and received a response at the second level of review on March
16    26, 2018, which explained to Plaintiff that to exhaust his administrative
      remedies, a decision must be rendered at the third level of review.
17    (Moseley Decl. Ex. B.)

18          8.      Plaintiff appealed SAC-B-18-1033 to the OOA on May 14,
      2018, where it was assigned OOA Appeal Log No. 1806506 and was
19    screened out on June 26, 2018, because it was missing necessary
      supporting documents, specifically the CDCR Form 1858, Rights and
20    Responsibilities Statement, and mailed Plaintiff a screen-out letter
      informing him of the missing documentation on July 2, 2018, explicitly
21    stating: "Be advised that you cannot appeal a rejected appeal, but should
      take the corrective action necessary and resubmit the appeal within the
22    timeframes specified in CCR 3084.6(a) and CCR 3084.8(b). Pursuant to
      CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be
23    resubmitted. However, a separate appeal can be filed on the cancellation
      decision. The original appeal may only be resubmitted if the appeal on the
24    cancellation is granted." (Moseley Decl. ¶ 8 and Ex. B.)

25          9.      Plaintiff resubmitted OOA Appeal Log No. 1806506 (SAC-
      B-18-01033) to the OOA on December 13, 2018, and the appeal was
26    cancelled on February 11, 2019, in a cancellation letter which informed
      Plaintiff of the following: "Your appeal has been cancelled pursuant to the
27    California Code of Regulations, Title 15, Section (CCR) 3084.6(c)(10).
      Failure to correct and return a rejected appeal within 30 calendar days of
28    the rejection," and "The Office of Appeals rejected and returned the

1

2

3

appeal to the inmate on July 2, 2018.  The envelope addressed to The Office of Appeals was signed by staff on November 29, 2018, and was postmarked on December 4, 2018.  The envelope was received in our office on December 13, 2018.  This exceeds time constraints to submit for third level review."  (Moseley Decl. ¶ 9 and Ex. B.)

4

5

6

   10. The February 11, 2019, cancellation letter further explained that, "Pursuant to CCR3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted.  However, a separate appeal can be filed on the cancellation decision."  (Moseley Decl. ¶ 9 and Ex. B.)

7

8

   11. The OOA has never rendered a decision at the third level of review for OOA Appeal Log No. 1806506 (SAC-B-18-01033).  (Moseley Decl. ¶ 10.)

9

10

   12. The OOA has no record of Plaintiff appealing or challenging the cancellation of OOA Appeal Log No. 1806506 (SAC-B-18-01033).  (Moseley Decl. ¶10.)

11

ECF No. 77-3.

12

13

Plaintiff has not opposed Defendants' motion nor disputed any of Defendants' facts.

14

### III.  STANDARD FOR SUMMARY JUDGEMENT

15

16

17

18

19

20

21

22

23

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The standard for summary judgment and summary adjudication is the same.  See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Under summary judgment practice, the moving party

24

25

26

27

. . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

28

1    　　　　If the moving party meets its initial responsibility, the burden then shifts to the

2    opposing party to establish that a genuine issue as to any material fact actually does exist.  See

3    Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

4    establish the existence of this factual dispute, the opposing party may not rely upon the

5    allegations or denials of its pleadings but is required to tender evidence of specific facts in the

6    form of affidavits, and/or admissible discovery material, in support of its contention that the

7    dispute exists.  See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11.  The

8    opposing party must demonstrate that the fact in contention is material, i.e., a fact that might

9    affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S.

10   242, 248 (1986); T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th

11   Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

12   return a verdict for the nonmoving party, Wool v. Tandem Computs., Inc., 818 F.2d 1433, 1436

13   (9th Cir. 1987).  To demonstrate that an issue is genuine, the opposing party "must do more than

14   simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record

15   taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no

16   'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).  It is sufficient that "the

17   claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions

18   of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.

19   　　　　In resolving the summary judgment motion, the Court examines the pleadings,

20   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.

21   See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, see Anderson,

22   477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the

23   court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587.

24   Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

25   produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

26   Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

27   1987).  Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the

28   judge, not whether there is literally no evidence, but whether there is any upon which a jury could

1    properly proceed to find a verdict for the party producing it, upon whom the onus of proof is

2    imposed." Anderson, 477 U.S. at 251.

3

4                                **IV.  DISUCSSION**

5           Defendants contends that Plaintiff has not exhaust his available administrative

6    remedies because his grievance was cancelled at the third level of review for failure to submit

7    supporting documents and he failed to timely appeal the cancellation.  ECF No. 77-2 at 7-9.

8           The Prison Litigation Reform Act ("PLRA") requires prisoners seeking relief

9    under § 1983 to exhaust all available administrative remedies prior to commencing litigation.  See

10   42 U.S.C. § 1997e(a); Manley v. Rowley, 847 F.3d 705, 711 (9th Cir. 2017).  The Supreme Court

11   addressed the exhaustion requirement in Jones v. Block, 549 U.S. 199, 211 (2007), and

12   established three principles.  First, prisoners are not required to specially plead or demonstrate

13   exhaustion in the complaint because lack of exhaustion is an affirmative defense that defendants

14   must plead and prove.  Id. at 216.  Second, individuals named as defendants in a complaint do not

15   necessarily need to be named in the grievance process for exhaustion to be considered adequate

16   because the applicable procedural rules that a prisoner must follow are defined by the particular

17   grievance process, not by the PLRA.  Id. at 217-19.  Third, the PLRA does not require dismissal

18   of an entire complaint if some, but not all, claims are unexhausted.  Id. at 219-24.

19          The defendant bears the burden of showing non-exhaustion and if a defendant

20   meets his or her burden, the burden shifts to the plaintiff to show that the grievance process was

21   effectively unavailable.  See Albino v. Baca, 747 F.3d 1162, 1171-72 (9th Cir. 2014).  With that

22   in mind—there are no special circumstance exceptions to the exhaustion requirement.  Ross v.

23   Blake, 578 U.S. 632, 639-42 (2016).  The PLRA does not authorize courts to look to the

24   particulars of a case to determine if circumstances excuse a failure to exhaust.  See id.  A

25   plaintiff's chance to show that the administrative process was unavailable constitutes PLRA's

26   own, written exception.  See id. at 641-42.  The PLRA requires a plaintiff to exhaust available

27   administrative remedies but does not require the exhaustion of unavailable remedies.  Id.  Put

28   another way, inmates are obligated to exhaust only those grievance procedures "capable of use"

                                          7

1  to obtain some relief for the conduct that the inmate challenges.  Id. at 643-44.  An administrative

2  remedy might be unavailable when procedures operate to a "dead end" and officials do not

3  actually provide relief, when an administrative scheme is so complex that inmates cannot use it,

4  or when officials simply thwart the grievance process.  Id.

5          The PLRA requires "proper exhaustion."  Woodford v. Ngo, 548 U.S. 81, 93

6  (2007); Merchant v. Corizon Health, Inc., 993 F.3d 733, 742 (9th Cir. 2021).  Inmates must

7  comply with the deadlines and "critical procedural rules" of a prison's administrative relief

8  system.  Woodford, 548 U.S. at 91, 95; Merchant, 933 F.3d at 742.  This means that an inmate

9  must use all the steps that a prison employs in its grievance process, permitting the prison a

10  chance to reach the merits of the grievance and correct its own errors.  Woodford, 548 at 90-91,

11  94; see Fuqua v. Ryan, 890 F.3d 838, 844-45 (9th Cir. 2018); Reyes v. Smith, 810 F.3d 654, 657

12  (9th Cir. 2016).  When reviewing exhaustion under California prison regulations, which have

13  since been amended, the Ninth Circuit observed that, substantively, a grievance is sufficient if it

14  "puts the prison on adequate notice of the problem for which the prisoner seeks redress."  Sapp v.

15  Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010); see Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir.

16  2009).

17          Until June 1, 2020, California allowed inmates to administratively appeal "any

18  policy, decision, action, condition, or omission by the department or its staff that the inmate or

19  parolee can demonstrate as having a material adverse effect upon his or her health, safety, or

20  welfare."  Cal. Code Regs., tit. 15, § 3084.1(a) (repealed 2020); see Munoz v. Cal. Dep't of

21  Corrs., No. CV 18-10264-CJC (KS), 2020 WL 5199517, at *6 (C.D. Cal. July 24, 2020).  The

22  California Department of Corrections and Rehabilitation ("CDCR") used to have a three-step

23  process for grievances, but now has a two-step process.  Id.; see Cal. Code Regs., tit. 15, §§ 3480-

24  87.

25          Broadly described, under the former three-step process, a prisoner had to submit a

26  grievance to the appeals coordinator of the prison where his or her claim arose.  Munoz, 2020 WL

27  519917, at *6.  If the inmate did not receive relief at the first level, he or she had to submit a

28  second level appeal.  Id.  If the inmate did not receive adequate relief at the second level, he or

1   she had to submit a third level appeal to the Office of Appeals.  Id.  If the Office of Appeals

2   reached a decision at the third level of review, the administrative remedies would be considered

3   properly exhausted.  Id.; see Reyes, 810 F.3d at 657.

4            The undisputed facts establish that Plaintiff has not exhaust his administrative

5   remedies prior to commencing this action.  Plaintiff's appeal was canceled at the third level of

6   review on July 2, 2018, because it was missing CDCR Form 1858.[3]  ECF No. 77-4 at 18.  The

7   Office of Appeals informed Plaintiff that he needed to file a separate appeal on the cancellation

8   decision, and if that was granted, he could resubmit the original appeal.  Id.  Plaintiff had 30 days

9   to file such an appeal; however, there is no evidence in the record that he did so within that

10  timeframe.  While the record contains a copy of Plaintiff's signed CDCR Form 1858, id. at 20,

11  there is no evidence of when, or even if, Plaintiff submitted it to the Office of Appeals.  Further, it

12  appears that the only correspondence the Office of Appeals received from Plaintiff after his

13  appeal was rejected was dated November 29, 2018.  Id. at 3.  Thus, even if Plaintiff had included

14  the CDCR Form 1858 in his correspondence dated November 29, 2018, it would have been

15  untimely because more than 30 days had passed since his appeal was rejected at the third level.

16  Because the undisputed evidence shows that Plaintiff failed to exhaust administrative remedies

17  prior to filing suit, Defendants' motion for summary judgment should be granted.

18

19                                    **V.  CONCLUSION**

20            Based on the foregoing, the undersigned recommends that Defendants' motion for

21  summary judgment, ECF No. 77, be granted and Defendant Castello, who remains unserved at

22  this time, be dismissed without prejudice, pursuant to Federal Rule of Evidence 4(m).

23            These findings and recommendations are submitted to the United States District

24  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within 14 days

25  after being served with these findings and recommendations, any party may file written

26  objections with the court.  Responses to the objections shall be filed within 14 days after service

27

---

28  [3] On July 10, 2018, Plaintiff requested a CDCR Form 1858, and the prison provided him with a blank copy on July 17, 2018.  ECF No. 77-4 at 36.

1    of objections.  Failure to file objections within the specified time may waive the right to appeal.

2    See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3

4

5    Dated:  January 5, 2022

6                                                                 DENNIS M. COTA

7                                                                 UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28